## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN MARIE KRUPILIS, | : | CIVIL NO.: 1:20-CV-02098 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| *Acting Commissioner of* | : | |
| *Social Security*, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### I. Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and

1383(c).  Karen Marie Krupilis ("Krupilis") seeks judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying her

claim for supplemental security income benefits.  Because the Commissioner's

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while an action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

decision is supported by substantial evidence, we recommend the court affirm the Commissioner's decision.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 17-1 to 13*.[2]  On October 2, 2018, Krupilis filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on December 30, 2014[3]. *Admin. Tr.* at 15.  The claim was denied initially on January 23, 2019. *Id.*  Krupilis filed a request for hearing on January 31, 2019. *Id.*  The hearing was held on October 2, 2019. *Id.*  Following the initial denial of Krupilis' claim, the case went before Administrative Law Judge Richard E. Guida ("the ALJ"), who concluded that Krupilis, represented by counsel, was not disabled, and he denied her benefits on that basis on November 6, 2019. *Id*. at 24.  Krupilis requested review of the ALJ's decision before the Social Security Administration's Appeals Council, which denied her request on January 14, 2020. *Id.* at 1.

Krupilis filed this action on November 12, 2020. *Doc. 1*.  The Commissioner field an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 16-17*.  The parties consented to

---

[2] The facts of the case are well known to the parties and will not be repeated here.  Instead, we will recite only those facts that bear Krupilis' claims.

[3] Krupilis later amended her alleged date of onset of disability to August 12, 2017.

proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 13*. The parties then filed briefs, *see docs. 18, 21, 22*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

3

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Krupilis is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other

4

substantial gainful work that exists in the national economy. 42 U.S.C.

§§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

6

## IV.  The ALJ's Decision Denying Krupilis' Claim.

On November 6, 2019, the ALJ issued a decision denying Krupilis benefits. *Admin. Tr.* at 12-24.  The ALJ first concluded that Krupilis last met the insured-status requirements of the Social Security Act on September 30, 2018. *Id.* at 17.

At step one of the sequential evaluation process, the ALJ found that Krupilis has not engaged in substantial gainful activity from her amended alleged onset date of August 12, 2017 through her date last insured of September 30, 2018. *Id.*

At step two of the sequential-evaluation process, the ALJ found that Krupilis had severe impairments of colitis, degenerative disc disease, fatty liver disease, gastro esophageal reflux disease (GERD), hyperlipidemia, and hypothyroidism. *Id.*

At step three of the sequential evaluation process, the ALJ found that none of Krupilis' impairments met or equaled the severity of the impairments listed under 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 19.  In making this finding, the ALJ noted that there was little evidence to support a finding that Krupilis' limitations met the requirements of Listing 11.22A, 11.22B, or 11.22C. *Id.*

The ALJ fashioned an RFC, considering Krupilis' limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and she could have frequently handled and fingered bilaterally.  She could have occasionally performed postural activities

except she could have never climbed ladders, ropes, or scaffolds.  She
should have avoided concentrated exposure to hazards.

*Id.*

In making this determination, the ALJ considered Krupilis' statements that
she is unable to work because she does not know how she feels from day to day
and that pain disrupts her sleep; that it takes longer for her to dress herself; that she
needs a shower chair; that she sometimes lacks strength to care for herself; that she
has difficulty remembering, completing tasks, concentrating, using her hands,
lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and
climbing stairs; that she must rest five minutes after walking five minutes; that
sometimes she feels like she is going to pass out; that she does not handle stress
well; that she gets migraines four to five days a week; and that she has episodes of
lightheadedness and dizziness.  *Id.* at 20-21.  The ALJ also considered Krupilis'
rheumatologist's notations that Krupilis has tenderness with her spine, mild
limitation of motion, and 16 of 18 tender points. *Id* at 20.

The ALJ found that Krupilis' "medically determinable impairments could
reasonably be expected to cause the alleged symptoms; however, the claimant's
statements concerning the intensity, persistence and limiting effects of these
symptoms are not entirely consistent with the medical evidence and other evidence
in the record." *Id.*

At step four of the sequential-evaluation process, the ALJ concluded that Krupilis was capable of performing past relevant work as a receptionist. *Id.* at 23. The ALJ went on to state that "[t]his work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." *Id.*

At step five of the sequential-evaluation process, the ALJ found that "[a]lthough the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." *Id.* The ALJ noted that Krupilis has a high school education and that she can communicate in English effectively. *Id.*

## V. Discussion.

Krupilis challenges the ALJ's decision based on the ALJ's evaluation of the medical opinions of record.  In her statement of errors, Krupilis argues: (1) that the ALJ did not properly weigh all the medical evidence of record; and (2) that the ALJ erred when considering Krupilis' modicum of activities of daily living as evidence that she could perform full-time, sustained employment activity. *Doc. 18* at 3.

Because Krupilis' claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.  The regulations in this regard are different for claims filed before March 27, 2017, on

9

the one hand, and for claims, like Krupilis', filed on or after March 27, 2017, on the other hand.  Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at \*7 (M.D. Pa. Mar. 29, 2021).  Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*.  But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).  And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

10

evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any

11

other factors that tend to support or contradict the opinion. 20 C.F.R.

§§ 404.1520c(c), 416.920c(c).  The most important of these factors are the

"supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations

provide that "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the

medical opinions or prior administrative medical finding(s) will be." 20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations

provide that "[t]he more consistent a medical opinion(s) or prior administrative

medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(2).

　　　　The ALJ must explain how he or she considered the "supportability" and

"consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her

consideration of the other factors. *Id*.  But if there are two equally persuasive

medical opinions about the same issue that are not exactly the same, then the ALJ

must explain how he or she considered the other factors. 20 C.F.R.

§§ 404.1520c(b)(3), 416.920c(b)(3).

### A.  The ALJ properly considered all the evidence of record.

Krupilis argues that the ALJ erred in his finding that the opinions of Dr.
Fisher and Dr. Gregorich were unsupported, and inconsistent with additional
evidence in the record.  Krupilis further contends that the ALJ erred in substituting
his own lay interpretation of the evidence in finding the opinions of Dr. Fisher and
Dr. Gregorich unpersuasive.  In response, the commissioner argues that the finding
that these opinions were unpersuasive was not based on the ALJ's lay
interpretation of the evidence, rather the ALJ considered conflicting medical
opinions and determined that those other than Dr. Fisher and Dr. Gregorich were
more persuasive because they were more supported by and more consistent with
other record evidence.

We are not persuaded by Krupilis' argument that the ALJ's evaluations of
Dr. Fisher's and Dr. Gregorich's opinions were inconsistent with the applicable
regulations.  In evaluating the medical opinion evidence of record, "the ALJ is not
only entitled but required to choose between" conflicting medical opinions. *Cotter*,
642 F.2d at 705.  "[T]he possibility of drawing two inconsistent conclusions from
the evidence does not prevent [the ALJ's decision] from being supported by
substantial evidence." *Consolo*, 383 U.S. at 620.  Moreover, "[i]n the process of

13

reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Here, the ALJ cited opinions in the record concerning Krupilis' "'limited . . . ambulation for distances' and 'up to 12 [migraines] a month that cause visual changes, decrease in focus and concentration, fatigue and nausea with occasional vomiting.'" *Admin. Tr.* at 21-22.  Specifically, he considered the opinions of Dr. Fisher and Dr. Gregorich and found them unpersuasive, reasoning that these opinions were inconsistent with Dr. Gregorich's treatment notes which show that Krupilis has normal head, normal circulation, intact pulses, no clubbing, no cyanosis, and no edema. *Id.* at 22.  The ALJ also reasoned that he found these opinions unpersuasive because they were "general, summary statements with minimal explanation." *Id.*  Finally, the ALJ noted that these opinions regarding Krupilis' functional capacity were inconsistent with her daily activities, which, as provided by Krupilis herself, include preparing her own meals, doing laundry, driving, and shopping in stores. *Id.*

To the extent which Krupilis argues that the ALJ was substituting his own medical determination for that of Dr. Fisher and Dr. Gregorich, this argument carries little merit.  Krupilis cites to *Ferguson v. Schweiker*, 765 F.2d 31, 36-37 (3d

Cir. 1985) in an attempt to bolster her argument that the ALJ has made his own medical determination.  In *Ferguson*, the court determined that the ALJ abused his discretion by reviewing laboratory reports and substituting his own judgment regarding these reports for that of the claimant's treating physician.[4]  The court found that the ALJ, absent other evidence supporting a finding of not disabled, abused his discretion in substituting his own personal determination for that of a treating physician.

Contrary to Krupilis' belief, the ALJ was not making his own determinations, rather, he was highlighting the findings of the very doctors' reports on which Krupilis relies.  Krupilis seems to focus only on those aspects of these reports which would indicate a finding of disability.  On the other hand, the ALJ, in looking at the record as a whole, considered both the notations indicating a finding of disability and those indicating an absence of disability.  After considering this information in conjunction with the entirety of the record, the ALJ determined, based on substantial evidence, that Krupilis was not disabled.

Krupilis also argues that the conclusory statements from Dr. Fisher and Dr. Gregorich that Krupilis is "disabled and unable to work," that Krupilis' conditions "make it difficult for her to sustain full time gainful employment," and that her

---

[4] It should be noted that *Ferguson* was decided under the old regulations, and that the opinion of a treating physician is no longer afforded greater "weight" than other medical opinions.

conditions make "her access to a full time job unreliable" should have been found to be persuasive. However, as outlined in 20 CFR § 404.1520b(c), statements regarding issues reserved to the Commissioner, such as statements regarding whether one is or is not disabled and whether one can or cannot work are inherently neither valuable nor persuasive, and the ALJ need not consider such statements. Here, Dr. Fisher's and Dr. Gregorich's statements regarding whether Krupilis can or cannot work and is or is not disabled fall squarely within those statements which are inherently neither valuable nor persuasive per 20 CFR § 404.1520b(c). Accordingly, the ALJ did not err in finding these statements unpersuasive.

In sum, the ALJ properly considered the record evidence as a whole. The ALJ found Dr. Cloutier's opinion persuasive because it was supported by progress notes showing that Krupilis is "fully oriented with normal affect, normal attention, normal concentration, intact recent and remote memory, clear speech, and appropriate fund of knowledge." *Admin. Tr.* at 22. The ALJ also found Dr. Walker's opinion partially persuasive because although Dr. Walker's opinion was supported by findings of "normal gait, normal strength, normal muscle tone, normal range of motion, normal sensation, normal cranial nerves, normal and symmetric reflexes, intact coordination, and full pulses," it was inconsistent with the fact that Krupilis was treated with medications. *Id* at 21. For reasons discussed

*supra* the ALJ found the opinions of Dr. Fisher and Dr. Gregorich unpersuasive.

Lastly, the ALJ considered testimony regarding Krupilis' symptoms and her daily

activities.  Examining the record as a whole, the ALJ reasoned and determined that

Krupilis was not disabled. *Id.* at 24. This determination was based on substantial

evidence.

### B. The ALJ appropriately examined Krupilis' daily activities.

Krupilis avers that the ALJ's consideration of Krupilis' daily activities in

support of the RFC finding was improper.  In support, Krupilis cites case law from

before the establishment of the new regulations, stating that the ability to perform a

modicum of activities of daily living does not equate to the ability to engage in

substantially gainful work.

Again, we are not persuaded by this argument.  In contrast, the

Commissioner correctly points out that the new regulations state that in

constructing an RFC, "[the ALJ] will assess your residual functional capacity

based on all of the relevant medical and other evidence." 20 CFR § 404.1545(a)(3).

This includes, among other things, "reports of daily activities." *Id*.  Although the

ALJ will consider activities of daily living, this evidence will be considered in

conjunction with the record as a whole, as the ALJ did here.

Additionally, the ALJ did not rely on Krupilis' statements about her ability

to do regular household activities as evidence that she is not disabled. *Asch v.*

*Kijakazi*, No. 3:21-CV-01163, 2022 WL 2336198, at *10 (M.D. Pa. May 13, 2022)

(citing *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981)).  Rather, "the ALJ relied on

these statements when determining whether [Krupilis'] assertions about [her]

symptoms were credible, which is permissible under the regulations." *Id.* (*See also*

20 CFR § 404.1529(c)(3)(i)).  "Furthermore, the ALJ did not rely entirely on

[Krupilis'] self-reported daily activities when evaluating [her] statements.  The

ALJ also relied heavily on a lack of support for the full extent of certain limitations

in the treatment records." *Id*.  And to the extent which Krupilis argues that the

ALJ's findings are not supported by any evidence, this is simply incorrect.  The

ALJ, as he explained in his opinion, found the examination from Dr. Cloutier

persuasive and the examination from Dr. Walker partially persuasive. *Admin. Tr.* at

21-22.

As explained *supra*, the ALJ examined the record as a whole when making

the RFC assessment, considering the supportability and consistency of that

evidence which supported a finding of disability, and that which supported a

finding of not disabled.  Ultimately, the ALJ determined that Krupilis was not

disabled.  And although Krupilis cites evidence favorable to a disability finding,

the ALJ decision is still supported by substantial evidence. *See Louis v. Comm'r of

Soc. Sec.*, 808 F.App'x 114, 118-19 (3d Cir. 2020); *Kirk v. Clovin*, No. 4:13-CV-

02735, 2015 WL 5915748, at *13 (M.D. Pa. Oct. 8, 2015).

### C.  Krupilis' remaining arguments are without merit whatsoever.

Although these arguments need not be addressed due to their frivolous nature, we will do so briefly.  First, Krupilis seems to contend that since ALJ Guida has been reversed before, that the same action should be taken in the instant matter.  The commissioner correctly states that this court not only should, but is bound to determine whether substantial evidence supports the ALJ's decision *in this case*. *See* 42 U.S.C. § 405(g).  Logically, this argument is baseless.  Just because an ALJ has committed errors in the past does not necessarily mean that he has committed an error in this case.  Further, Krupilis notes ten instances in which ALJ Guida has been remanded by this court in the past.  The commissioner fittingly responded with ten separate instances in which ALJ Guida has been affirmed by this court, notwithstanding the several times in which his decisions were not even appealed.

Next, Krupilis questions the credentials of Dr. Cloutier because a search for "Maria Cloutier" did not reveal any Pennsylvania licensed medical professionals under this name.  However, a brief review of the administrative transcript provided by the commissioner would have revealed that Dr. Cloutier's first name is "Marci" and the subsequent search would have shown that she has been a licensed psychologist in Pennsylvania since 2008. *Admin. Tr.* at 83.

Third, to the extent which Krupilis argues that the ALJ did not properly consider her lumbar x-rays, the ALJ was not required to do so because these x-rays were taken on November 8, 2018, which is after Krupilis' date of last insured. "The ALJ need only consider medical records prior to the date of last insured." *Cardinal v. Colvin*, No. 14-1368, 2016 WL 1237783 (E.D. Pa. Mar. 30, 2016). Accordingly, the ALJ was not required to consider this evidence.

Finally, to the extent which Krupilis argues that the ALJ's determination is incorrect, it is the right and responsibility of the ALJ to make such assessments, and we find that substantial evidence supported the ALJ's decision. "We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Krupilis' argument simply asks the court to reweigh the evidence, which we cannot do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (stating that the court may not weigh the evidence or substitute our conclusions for those of the ALJ). Because we are not permitted to reweigh the evidence, we conclude that the ALJ did not err in his finding that Krupilis was not disabled.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Krupilis.  An appropriate order follows.

*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge